UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

26cr194 PAM|SGE

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 1347<br>18 U.S.C. § 2<br>18 U.S.C. § 982(a)(7)<br>21 U.S.C. § 853(p)<br>28 U.S.C. § 2461(c) |
| v. | |
| JAMA YUSUF MOHAMOD, | |
| Defendant. | |

**THE UNITED STATES GRAND JURY CHARGES THAT:**

At all times relevant to this Indictment:

1. Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965 that provided benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services, was responsible for overseeing Medicaid in participating states, including Minnesota.

2. Individuals who received benefits under Medicaid were referred to as "recipients."

3. Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

SCANNED
OCT 27 2026 AL
U.S. DISTRICT COURT MPLS

4. Each state, including Minnesota, established and administered its own Medicaid program and determined the type, amount, duration, and scope of services covered within broad federal guidelines.

5. Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services. By submitting a claim, the provider certified, among other things, that the services were medically necessary, rendered to the patient as represented, and not rendered as a result of kickbacks or bribes.

6. In Minnesota, Medicaid was administered by the Minnesota Department of Human Services ("DHS").

7. Medicaid providers were required to meet certain requirements in order to participate in the Medicaid program, including billing and recordkeeping requirements. In Minnesota, these requirements were set forth in the Minnesota Health Care Programs ("MHCP") Provider Manual.

**A. Background on Minnesota's Integrated Community Supports ("ICS") Program**

8. In 2021, Minnesota began offering a new Medicaid benefit called Integrated Community Supports ("ICS"). ICS was designed to help people with disabilities live independently in the community rather than in an institutionalized setting such as a group home or assisting living facility.

9. According to DHS, ICS services consisted of daily one-on-one help with health, safety, and household tasks, including services and training for:

a. Community participation, such as help finding things to do, learning to get around, and interpersonal skills;

b. Health, safety, and wellness, such as setting up health appointments and learning how to stay healthy and safe;

c. Household management, such as making your home safe, following the rules of your lease, budgeting, and cooking; and

d. Adaptive skills (planning, preparing, and safety), such as crisis prevention, problem-solving, and living safely on your own.

10. DHS covered ICS services for adults who qualified for certain Medicaid waivers that allowed them to receive home- and community-based services as an alternative to institutionalization:

a. The "Brain Injury" waiver provided home- and community-based services to adults with a diagnosis of brain injury who would otherwise require the level of care provided in a specialized nursing facility or neurobehavioral hospital;

b. The "Community Access for Disability Inclusion" waiver provided home- and community-based services to adults with disabilities who would otherwise require the level of care provided in a nursing facility;

c. The "Community Alternative Care" waiver provided home- and community-based services to adults who were chronically ill or medically fragile and would otherwise require the level of care provided in a hospital; and

d. The "Developmental Disabilities" waiver provided home- and community-based services to children and adults with a diagnosis of a developmental disability or a related condition who required the level of care provided in an intermediate care facility for persons with developmental disabilities.

11. Medicaid recipients eligible for ICS services were required to have a coordinated services and supports plan that identified the ICS provider and specified the applicable per diem rate. The ICS per diem rate is determined by the average number of hours of in-person and remote ICS services the Medicaid recipient needs. ICS Providers were required to provide the services identified in the support plan and any addendum to the support plan.

12. ICS providers were not permitted to submit a claim for reimbursement from Medicaid for any period that the claimed Medicaid recipient was not in their assigned residence for more than 24 hours.

13. ICS providers were not permitted to submit a claim for reimbursement from Medicaid for services for which they lacked documentation of the provision of the service.

**B. Defendant and Relevant Entity**

14. JAMA YUSUF MOHAMOD was a resident of Hennepin County, Minnesota, at all times relevant to this Indictment.

15. American Home Health Care LLC ("AHHC") was registered as a business entity with the Minnesota Secretary of State in or around April 2016, identifying JAMA YUSUF MOHAMOD as the sole organizer.

16. In or around October 2022, JAMA YUSUF MOHAMOD enrolled AHHC with DHS for the purpose of being permitted to submit claims to the Minnesota Medicaid ICS program.

17. From in or around October 2022, and continuing through in or around September 2025, JAMA YUSUF MOHAMOD submitted claims to Minnesota Medicaid for purportedly providing ICS services.

18. From in or around October 2022, and continuing through in or around September 2025, JAMA YUSUF MOHAMOD controlled the operation of AHHC, including the submission of claims to Minnesota Medicaid.

**C. The Scheme to Defraud Medicaid**

19. From in or around October 2022 through in or around September 2025, in the District of Minnesota and elsewhere, defendant JAMA YUSUF MOHAMOD did knowingly devise and participate in a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by,

and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

20. It was the purpose of the scheme for JAMA YUSUF MOHAMOD to unlawfully enrich himself, by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicaid (i) that inflated the number of hours of ICS services actually provided and (ii) for ICS services that were not actually provided; (b) concealing the submission of false and fraudulent claims to Medicaid and the receipt and transfer of proceeds of the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of JAMA YUSUF MOHAMOD and others, and to further the fraud scheme.

21. The manner and means by which JAMA YUSUF MOHAMOD executed the scheme included, among other things, the following:

a. JAMA YUSUF MOHAMOD registered AHHC with the Minnesota Secretary of State in or around April 2016 and identified himself as the company organizer.

b. In or around October 2018, JAMA YUSUF MOHAMOD completed a two-day training through DHS regarding billing to Medicaid programs.

c. Between in or around October 2022 and in or around December 2022, DHS approved two provider numbers associated with AHHC to submit claims for ICS services to be reimbursed by Minnesota Medicaid.

d. In or around December 2022, JAMA YUSUF MOHAMOD submitted a Disclosure of Ownership and Control of Interest of an Entity application to DHS identifying himself as the 100% owner of AHHC.

e. In or around December 2022, JAMA YUSUF MOHAMOD submitted a Provider Agreement to DHS, which he signed promising to "[a]ssume full responsibility for the accuracy of claims submitted to DHS," "[m]aintain records that fully disclose the extent of services provided … for a period of five years," and "[r]efund any overpayments made to [AHHC] by DHS, including those resulting from … billing errors [and] fraudulent billing."

f. In or around December 2022, JAMA YUSUF MOHAMOD submitted a Designating of Billing Person for Home and Community-Based Services Waiver or Alternative Care form to DHS identifying himself as the sole biller for AHHC.

g. AHHC rented apartments in Minnetonka and St. Paul for the purpose of housing Medicaid recipients for whom AHHC could bill Medicaid for ICS services. JAMA YUSUF MOHAMOD , by and through AHHC, subleased these apartments to Medicaid recipients for rates below fair market value, in violation of Medicaid rules and regulations.

h. In or around January 2019, JAMA YUSUF MOHAMOD was added as a signatory to Bank Account 1, held in the name of AHHC. Between in or around October 2022 and in or around September 2025, JAMA YUSUF MOHAMOD was the sole signatory on Bank Account 1.

i. From in or around October 2022 through in or around September 2025, Bank Account 1 received reimbursements from Medicaid for ICS services purportedly provided by AHHC.

j. From in or around October 2022 through in or around September 2025, JAMA YUSUF MOHAMOD was responsible for the submission of claims to Medicaid for ICS services purportedly provided by AHHC to Medicaid recipients.

k. From in or around October 2022 through in or around September 2025, JAMA YUSUF MOHAMOD knowingly and willfully submitted and caused the submission of claims to Medicaid for (i) more ICS services than AHHC provided to Medicaid recipients, and (ii) ICS services that AHHC did not provide.

l. JAMA YUSUF MOHAMOD , by and through AHHC, knowingly and willfully submitted and caused the submission of claims to Medicaid for ICS services purportedly provided during periods of time when Medicaid recipients were not actually at their residences and could not have received the billed for services.

m. JAMA YUSUF MOHAMOD , by and through AHHC, knowingly and willfully submitted and caused the submission of claims to Medicaid for ICS services for which AHHC did not have documentation to justify claims for the billed for services, in violation of Medicaid rules and regulations.

n. JAMA YUSUF MOHAMOD , by and through AHHC, knowingly and willfully submitted and caused the submission of claims to Medicaid for ICS services that were insufficient to meet the needs of Medicaid recipients as defined in their person-centered support plans.

o. In furtherance of the scheme, JAMA YUSUF MOHAMOD submitted and caused the submission of a claim to Medicaid for ICS services provided to Medicaid recipient C.S., who was supposed to be receiving 8 hours of care per day. The claim was in the amount of approximately $570.02, for services purportedly provided on October 27 and 28, 2024, when, in fact, Medicaid recipient C.S. was on vacation outside of Minnesota and could not have received the billed for services.

p. In furtherance of the scheme, JAMA YUSUF MOHAMOD submitted and caused the submission of a claim to Medicaid for ICS services provided to Medicaid recipient C.S., who was supposed to be receiving 8 hours of care per day. The claim was in the amount of approximately $570.02, for services purportedly provided on February 21 and 22, 2025, when, in fact, Medicaid recipient C.S. was attending an out-of-town funeral and could not have received the billed for services.

q. In furtherance of the scheme, JAMA YUSUF MOHAMOD submitted and caused the submission of a claim to Medicaid for ICS services provided to Medicaid recipient C.P., who was supposed to be receiving 7.75 hours of care per day. The claim was in the amount of approximately $533.18,

for services purportedly provided on August 24 and 25, 2024, when, in fact, Medicaid recipient C.P. was on vacation outside of Minnesota and could not have received the billed for services.

r. Between on or about March 1, 2023, and on or about November 30, 2024, JAMA YUSUF MOHAMOD submitted and caused the submission of claims to Medicaid for 417 days of ICS services provided to Medicaid recipient A.S., who was supposed to receive eight hours of in-person care and two hours of remote care per day, when, in fact, AHHC had no documentation to support any services provided on 169 days. The claims for the 169 days without documentation were in the amount of approximately $55,570.58, for services purportedly provided to Medicaid recipient A.S. on those days.

s. To further the scheme, JAMA MOHAMAD created false documentation to justify the services that AHHC claimed that it provided to Medicaid recipients.

t. From in or around October 2022 through in or around September 2025, JAMA YUSUF MOHAMOD , through AHHC, billed Minnesota Medicaid approximately $3.2 million for ICS services purportedly provided to Medicaid recipients and received approximately $3.2 million based on those false and fraudulent claims.

**Counts 1 through 8**
(Health Care Fraud; Aiding and Abetting)

22. Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated herein.

23. In the District of Minnesota and elsewhere, JAMA YUSUF MOHAMOD , aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicaid, in connection with the delivery of, and payment for, health care benefits, items, and services, by causing the submission of the following false and fraudulent claims to Minnesota Medicaid for ICS services purportedly provided on or about the dates set forth:

| Count | Medicaid Recipient | Medicaid Claim Number | Date of Claimed Service | Approx. Amount Billed |
|---|---|---|---|---|
| 1 | C.S. | 52431100400020365 | 10/27/2024 | $285.01 |
| 2 | C.S. | 52431100400020365 | 10/28/2024 | $285.01 |
| 3 | C.S. | 52506400400080417 | 02/21/2025 | $285.01 |
| 4 | C.S. | 52506400400080417 | 02/22/2025 | $285.01 |
| 5 | C.P. | 52425500400012625 | 08/24/2024 | $276.59 |
| 6 | C.P. | 52424700400008996 | 08/25/2024 | $276.59 |

| | | | | |
|---|---|---|---|---|
| 7 | A.S. | 52319400401077965 | 07/08/2023 | $328.82 |
| 8 | A.S. | 52319400401077965 | 07/09/2023 | $328.82 |

(Title 18, United States Code, Sections 1347 and 2.)

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. § 982(b)(1), 18 U.S.C. § 982(a)(7))**

24. The allegations contained in Counts 1 through 8 of this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture against defendant JAMA YUSUF MOHAMOD pursuant to the provisions of Title 18, United States Code, Section 982.

25. Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 8 of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

26. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

UNITED STATES ATTORNEY

FOREPERSON

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division
U.S. Department of Justice